Filed 6/27/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JOHN WILLIAMS et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> ATRIA LAS POSAS, <br><br> Defendant and Appellant. | 2d Civil No. B282513 <br> (Super. Ct. No. 56-2016- <br> 00484702-CU-MM-VTA) <br> (Ventura County) |

Atria Las Posas (Atria) appeals from an order denying its petition to compel arbitration. The trial court denied the petition because of an integration clause in an agreement the parties signed. It determined that the clause precluded Atria from relying on a separate agreement containing an arbitration clause. We reverse the order because the integration clause does not preclude proof of the arbitration agreement, and we remand to the trial court with directions to consider other objections raised by respondents to the arbitration agreement.

FACTUAL AND PROCEDURAL HISTORY

John Williams, M.D., suffered major injuries, including a traumatic brain injury, in a bicycle accident. Vicktoriya Marina-Williams is his wife.

Atria is an entity which owns and operates a residential care facility for elder or dependent adults. After his bicycle accident, Williams was admitted to Atria's facility. At that time, Marina-Williams explained to Atria's representatives that her husband had previously been placed in a locked "Memory Unit" due to his cognitive impairments.

Atria personnel asked Williams to sign a "Residency Agreement," and he did so. Marina-Williams did not sign the agreement. The agreement contains an integration clause which reads in relevant part as follows: "This Residency Agreement and all of the Attachments and documents referenced in this Residency Agreement constitute the entire agreement between you and us regarding your stay in our Community and super[s]edes all prior agreements regarding your residency." The Residency Agreement does not contain an arbitration clause.

Immediately after signing the Residency Agreement, Williams signed a separate "Agreement to Arbitrate Disputes." "Article I: Arbitration" provides in relevant part as follows: "It is understood that any and all legal claims or civil actions arising out of or relating to care or services provided to you at [Atria] . . . or relating to the validity or enforceability of the Residency Agreement for [Atria], will be determined by submission to arbitration as provided by: (1) the Federal Arbitration Act (FAA), 9 U.S.C., Sections 1-16, or (2) CA law, in the event a court determines that the FAA does not apply." Again, Marina-Williams did not sign this agreement.

Shortly after his admission to Atria, Williams walked away from the facility. When last observed at 5:00 a.m., he had not yet had his breakfast or his morning medications. Several hours later, paramedics found him lying in a ditch five miles

away.  He suffered kidney failure, respiratory arrest, heat stroke, and a second traumatic brain injury.

Williams and Marina-Williams sued Atria and Williams's primary care physician, Steven Barr, M.D.  In one cause of action, they alleged that both Atria and Barr were negligent.  In another, Marina-Williams sued both Atria and Barr for loss of consortium.

Atria petitioned to compel arbitration based upon the arbitration agreement.  Williams and Marina-Williams opposed the petition.  They argued that the integration clause in the Residency Agreement bars proof of the arbitration agreement; that the third party litigation exception to arbitration in Code of Civil Procedure section 1281.2, subdivision (c) (hereafter section 1281.2(c)) applies; that the arbitration agreement is unconscionable; and that Marina-Williams is not a party to nor bound by the arbitration agreement.[1]  The trial court denied the petition after concluding that the integration clause of the Residency Agreement is "dispositive."

DISCUSSION

### 1. *The Integration Clause*

Atria contends that the trial court erred when it concluded that the integration clause in the Residency Agreement precludes it from relying on the arbitration agreement.  We agree and reverse.

"'"'There is no uniform standard of review for evaluating an order denying a [petition] to compel arbitration.  [Citation.]  If the court's order is based on a decision of fact, then we adopt a substantial evidence standard.  [Citations.]

---

[1] Although not relevant to this appeal, they also argued that Williams lacked capacity to sign the agreements.

3

Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]"" [Citation.]" (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 839-840 (*Avila*).) When the parties to an agreement express their intention that it is the final and complete expression of their agreement, an integration occurs. Such a contract may not be contradicted by evidence of other agreements. Whether an agreement is an integration, i.e., intended as the final and complete expression of the parties' agreement, is a question of law for de novo review. (*Hayter Trucking, Inc. v. Shell Western E&P, Inc.* (1993) 18 Cal.App.4th 1, 14-15.)

Here the trial court concluded that the Residency Agreement was intended by the parties as the complete and final expression of their agreement. In doing so, it relied on *Grey v. American Management Services* (2012) 204 Cal.App.4th 803 (*Grey*). But *Grey* is inapposite.

In *Grey*, the plaintiff applied for employment and was required to sign an "issue resolution agreement" (IRA) as a condition to having his application considered. (*Grey*, *supra*, 204 Cal.App.4th at p. 805.) The IRA included a broad arbitration provision. (*Ibid*.) Later, he was hired and signed an employment agreement. The employment agreement included a more limited arbitration provision and an integration clause. (*Ibid*.) When the plaintiff sued years later for employment discrimination, harassment, and retaliation, his employer asserted a right to arbitrate based on the broad arbitration provision of the IRA. (*Id*. at p. 806.)

The *Grey* court concluded that the employment agreement superseded the IRA, and the employer therefore could

4

not rely on the terms of the IRA to compel arbitration, because an integrated agreement "'may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.' [Citation.]" (*Grey, supra*, 204 Cal.App.4th at p. 807; see Code Civ. Proc., § 1856, subd. (a).) "Since the IRA predates the employment contract, it was superseded by that contract's integration clause." (*Grey*, at p. 808.)

Here, a review of the timing of the two agreements, as well as their contents, establishes that the Residency Agreement was not intended as the final and complete expression of the parties' agreement. By its express terms, it superseded "prior" agreements. But the arbitration agreement was signed *after* the Residency Agreement. And the arbitration agreement expressly provides that it applies to claims regarding "the validity or enforceability of the Residency Agreement."[2] The trial court erred in concluding that the integration clause in the Residency Agreement precludes proof of the later signed Agreement to Arbitrate Disputes.

### 2. *Other Defenses to Arbitration*

Our conclusion that proof of the arbitration agreement is not barred by the integration clause does not, however, end our inquiry. Respondents raised other objections to enforcement of the arbitration clause which were not decided because the trial court found the integration clause to be dispositive. Marina-Williams contends that because she did not

---

[2] Although respondents point out that the Residency Agreement contains a grievance procedure, that procedure only applies to internal grievances or requests for investigation by a local or state ombudsman. It does not discuss litigation or arbitration as a means of dispute resolution.

sign the arbitration agreement, she is not bound by it. In addition, the trial court did not decide whether section 1281.2(c) would apply if the arbitration clause were enforceable. Finally, the court did not determine if the Agreement to Arbitrate Disputes is unconscionable and therefore unenforceable.

### a. *The Loss of Consortium Claim*

Atria contends that Marina-Williams's claim for loss of consortium "falls within the arbitration agreement," even though she did not sign it, because it purports to include claims arising out of Atria's care brought by the spouses of injured parties. We disagree.

Whether a third party is bound by an arbitration agreement presents a question of law. (*Avila*, *supra*, 20 Cal.App.5th at p. 840.) "[P]arties can only be compelled to arbitrate when they have agreed to do so." (*Id.* at p. 843.) But here, no evidence was presented that Marina-Williams signed the Agreement to Arbitrate Disputes, or otherwise agreed to its terms.

And Marina-Williams's claim is not derivative of her husband's cause of action. In California, a claim for loss of consortium is an independent claim. (*Leonard v. John Crane, Inc.* (2012) 206 Cal.App.4th 1274, 1279-1280.) Because Marina-Williams is not acting as a representative or heir of her husband, but is pursuing her own claim based on the alleged misconduct of others, she is not bound by an arbitration agreement which she did not sign. (See *Bush v. Horizon West* (2012) 205 Cal.App.4th 924, 931.)

Accordingly, we conclude the order should be affirmed as to her cause of action for loss of consortium. (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193,

6

1201 [if appealed order is correct on any theory, it must be affirmed regardless of trial court's reasoning].)

### b. *Applicability of Section 1281.2(c)*

Atria contends that because the arbitration agreement provides for the application of the FAA, the procedural rules of the FAA apply here to the exclusion of section 1281.2(c). On this point, Atria is mistaken.

In *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 394 (*Cronus*), our Supreme Court held that language "calling for the application of the FAA 'if it would be applicable,' should not be read to preclude the application of [section] 1281.2(c), because it does not conflict with the applicable provisions of the FAA and does not undermine or frustrate the FAA's substantive policy favoring arbitration." This is so, held the court, because like other federal procedural rules, the procedural provisions of the FAA are not binding on state courts "'"*provided applicable state procedures do not defeat the rights granted by Congress*." [Citation.]' [Citation.]" (*Id.* at p. 390.) And section 1281.2(c) does not defeat rights granted by Congress because it is "'part of California's statutory scheme designed to enforce the parties' arbitration agreements, as the FAA requires.'" (*Id.* at p. 393.) Nevertheless, our Supreme Court pointed out that parties to an arbitration agreement can "expressly designate" that FAA procedural rules rather than state procedural laws shall apply. (*Id.* at p. 394, italics omitted.)

That is what occurred in *Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110. In *Rodriguez*, the parties expressly designated that FAA procedural rules would apply when they agreed unconditionally that claims would be arbitrated "pursuant to the FAA." (*Id.* at p. 1122.) The court

held this language to be "broad and unconditional" because there was "*no* other contract provision suggesting the parties intended to incorporate California arbitration law." (*Ibid*.) Nor was there "any language" suggesting that some provisions of the FAA would apply but not others. (*Ibid*.)

But here, the parties agreed to arbitration "as provided by" the FAA *or* California law "in the event a court determines that the FAA does not apply." Thus, this case is more like *Cronus*, which held that conditional language "calling for the application of the FAA 'if it would be applicable,' should not be read to preclude the application of [section] 1281.2(c)." (*Cronus*, *supra*, 35 Cal.4th at p. 394.)

Respondents on the other hand urge us to find that section 1281.2(c) applies, and then to apply it to affirm the order denying arbitration. But that is not our role. The third party litigation exception set forth in section 1281.2(c) only applies when the court determines that three conditions are satisfied. (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 967-968 [exception applies when: (1) party to arbitration agreement also a party to a pending court action with a third party; (2) third party action arises out of the same transaction or series of transactions; and (3) there is a possibility of conflicting rulings on a common issue of law or fact].) Once all three conditions are satisfied, section 1281.2(c) identifies four options from which the trial court may choose, including denial or stay of arbitration proceedings, among other things. (*Id*. at p. 968.) These options are entrusted to the trial court's discretion. (*Avila*, *supra*, 20 Cal.App.5th at p. 840.)

Accordingly, we will remand to the trial court for it to determine whether the conditions of section 1281.2(c) have been

met, and if so, to exercise its discretion on whether to stay or deny arbitration.  (See *Avila, supra*, 20 Cal.App.5th at p. 840.)

### c.  *Unconscionability*

Finally, respondents contend that the arbitration agreement is unconscionable and urge us to affirm the trial court's order on that basis.  We decline to do so.

Whether an agreement is unconscionable presents a question of law which we review de novo.  But "factual issues may bear on that determination.  [Citations].  Thus, to the extent the trial court's determination that the arbitration agreement was unconscionable turned on the resolution of conflicts in the evidence or on factual inferences to be drawn from the evidence, we consider the evidence in the light most favorable to the trial court's ruling and review the trial court's factual determinations under the substantial evidence standard." (*Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 892.)

Here, the trial court made no findings regarding either substantive or procedural unconscionability because it found the integration clause to be dispositive.  Accordingly, we will remand to the trial court for its determination in the first instance.[3]

### DISPOSITION

The order denying the petition to compel arbitration of Marina-Williams's cause of action for loss of consortium is affirmed.  As to all other causes of action, the order is reversed and the cause remanded with directions to the trial court to consider and rule on respondents' objections to enforcement of the

---

[3] Because this is an unqualified reversal, the trial court on remand can also consider respondents' claim of lack of capacity and other objections to enforcement of the arbitration agreement.

9

arbitration agreement.  The parties shall bear their own costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>


                                                    TANGEMAN, J.

We concur:



            GILBERT, P. J.



            PERREN, J.

Rocky J. Baio, Judge

Superior Court County of Ventura

_____

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Brittany Bartold Sutton, Catherine M. Asuncion and Jeffrey Healey, for Defendant and Appellant.

Law Offices of Terence Geoghegan, Terence Geoghegan; Law Offices of John R. Contos and John R. Cantos, for Plaintiffs and Respondents.