Filed 5/21/26  Mather v. Pricewaterhousecoopers CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| NICOLE S. MATHER,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP, et al.,<br><br>Defendants and Appellants. | B349827<br><br>(Los Angeles County Super. Ct. No. 25STCV10767) |

APPEAL from an order of the Superior Court of Los Angeles County, Steve Cochran, Judge.  Reversed and remanded with instructions.

Kibler Fowler & Cave, Michael D. Kibler, Matthew J. Cave, Dominique Caamano, and Jesse Mentz, for Defendants and Appellants.

Robins Kaplan, Roman M. Silberfeld, and Zachary A. Cohen, for Plaintiff and Respondent.

Defendants PricewaterhouseCoopers LLP, PwC US Tax LLP, and PricewaterhouseCoopers Advisory Services LLC (collectively, PwC) appeal from the trial court's order denying PwC's motion to compel arbitration. The court found the arbitration agreement plaintiff Nicole S. Mather signed was unconscionable and thus unenforceable. PwC contends the court erred because the parties agreed to delegate questions of enforceability to an arbitration panel and Mather failed to demonstrate the delegation clause was unenforceable. We agree and reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

In April 2024, Mather entered into an agreement for tax services with PwC. The agreement contained a provision requiring any dispute relating to the agreement to be resolved by arbitration. The arbitration would take place in New York before a panel of three arbitrators and would be governed by New York law. The arbitration panel would have no power to award non-monetary or equitable relief or to award damages inconsistent with a separate "Limitations on Liability" provision. All aspects of the arbitration were to be treated as confidential.

The arbitration provision contained a delegation clause. It stated: "The arbitration panel shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of, or defenses with respect to, this agreement, including but not limited to issues of arbitrability."

After a dispute arose between the parties relating to the tax services, Mather filed a complaint against PwC. PwC filed a motion to compel arbitration and stay the action, arguing Mather's claims were covered by the arbitration agreement. PwC

asserted Mather was the CEO of an international business and a sophisticated professional who over the years had entered into seven agreements with PwC for tax services. It argued that no grounds existed to deny arbitration and that Mather agreed to delegate exclusive authority to decide questions of arbitrability to a panel of arbitrators.

In opposition, Mather argued the arbitration clause was unenforceable because the agreement was unconscionable. She contended the arbitration provision was "embedded in a standardized, non-negotiable engagement letter presented on a take-it-or-leave-it basis by one of the world's most powerful professional services firms." She argued it included several one-sided terms that solely benefitted PwC. Further, she asserted the delegation clause itself was unconscionable because it was "not within the adhering party's reasonable expectations," created "a conflict of interest" for the arbitrators, and was "embedded in the same adhesive, boilerplate agreement and incorporated the same oppressive terms." In reply, PwC averred the court's analysis was limited to the validity of the delegation clause, which PwC argued was enforceable.

At the outset of the hearing on its motion, PwC informed the trial court that the claims asserted in the case were pending "before the agreed arbitration forum" and that the arbitration panel had ordered the parties to brief arbitrability. PwC argued the trial court did not need to decide unconscionability because it was not "[the] court's purview in light of the delegation clause."

The trial court stated it was "going to opt to go forward and decide" the matter. The court found the arbitration agreement had "minimal procedural unconscionability, the usual take it or leave it kind of thing." Next, the court found the agreement had

substantive unconscionability: "[T]he limit on the remedy, not so much the equitable, but on the damages. And then this out of state forum are troubling." The court said it was finding unconscionability and denied the motion. PwC appealed.

## DISCUSSION

### A.     Delegation Clauses

"Parties to an arbitration agreement may agree to delegate to the arbitrator, instead of a court, questions regarding the enforceability of the agreement." (*Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 241 (*Tiri*).) A delegation clause is treated as a separate agreement to arbitrate issues of enforceability. (*Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1559 (*Malone*).) Thus, "whether the arbitration agreement as a whole is ultimately held to be unenforceable will have no bearing on the enforcement of the delegation clause itself." (*Ibid.*) If a party makes a specific challenge to a delegation clause, "the court must determine whether the delegation clause itself may be enforced (and can only delegate the general issue of enforceability to the arbitrator if it first determines the delegation clause is enforceable)." (*Id.* at p. 1560, citing *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 70 (*Rent-A-Center*).)

"There are two prerequisites for a delegation clause to be effective. First, the language of the clause must be clear and unmistakable. [Citation.] Second, the delegation must not be revocable under state contract defenses such as fraud, duress, or unconscionability." (*Tiri, supra*, 226 Cal.App.4th at p. 242.) In this case, Mather does not dispute that the language of the delegation clause is clear and unmistakable.

4

**B.    The Trial Court Impliedly Found the Delegation Clause was Unconscionable**

PwC argues the trial court erred by failing to decide first whether the delegation clause was enforceable before finding the entire arbitration agreement unenforceable.  We conclude the trial court impliedly found the delegation clause was unconscionable.

Mather, in opposition to PwC's motion to compel arbitration, argued the delegation clause was unconscionable.  After PwC argued at the hearing that issues of enforceability were delegated to the arbitrators, the trial court stated it was "finding unconscionability" and denied the motion.  We presume the court impliedly found the delegation clause was unconscionable.  (See *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1567 [when trial court makes no express findings, we infer the court made every implied finding necessary to support the order compelling arbitration].)  Next, we determine whether the trial court erred in making that implied finding.

**C.    The Delegation Clause is Not Unconscionable**

"'[T]he core concern of unconscionability doctrine is the ""absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."'"'"  (*Tiri*, *supra*, 226 Cal.App.4th at p. 243.)  The party opposing arbitration has the burden of proving unconscionability, which has both procedural and substantive elements.  (*Id.* at p. 244.)  Any claim of unconscionability involving a delegation clause "must be *specific to the delegation clause*."  (*Ibid.*)

5

Procedural unconscionability focuses on oppression and surprise. (*Tiri*, *supra*, 226 Cal.App.4th at p. 245.) "'"Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form."'"' (*Malone*, *supra*, 226 Cal.App.4th at p. 1561.) "When the contract is a contract of adhesion imposed and drafted by the party with superior bargaining power, the adhesive nature of the contract is 'evidence of some degree of procedural unconscionability.'" (*Ibid.*)

"'Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be "so one-sided as to 'shock the conscience.'"'" (*Malone*, *supra*, 226 Cal.App.4th at p. 1561.)

"'Both procedural unconscionability and substantive unconscionability must be shown, but "they need not be present in the same degree" and are evaluated on "'a sliding scale.'" [Citation.] "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."'" (*Malone*, *supra*, 226 Cal.App.4th at p. 1561.) "'Where there is no other indication of oppression or surprise, the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high.'" (*Ibid.*)

Unconscionability is a question of law we review de novo. (*Williams v. Atria Las Posas* (2018) 24 Cal.App.5th 1048, 1055 (*Williams*).) However, "'factual issues may bear on that

6

determination.'" (*Ibid.*) "'[T]o the extent the trial court's determination that the arbitration agreement was unconscionable turned on the resolution of conflicts in the evidence or on factual inferences to be drawn from the evidence, we consider the evidence in the light most favorable to the trial court's ruling and review the trial court's factual determinations under the substantial evidence standard.'" (*Ibid.*)

1. *The Agreement had Minimal Procedural Unconscionability*

Mather contends substantial evidence supports the trial court's finding of "minimal procedural unconscionability" because the delegation clause was part of a contract of adhesion. We agree.

As Mather argues, the agreement itself, including the delegation clause, reflects standardized drafting. In her supporting declaration, Mather stated the agreement was presented to her on a take it or leave it basis without opportunity to negotiate the arbitration provision. The trial court agreed with Mather.

In arguing that Mather failed to demonstrate procedural unconscionability, PwC primarily points to evidence which may have supported a contrary finding or lessened the degree of procedural unconscionability. It argues that Mather was a sophisticated party. While PwC does not state it would have removed the delegation clause, it argues Mather had the opportunity to review and negotiate the agreement seven times.

In reviewing the trial court's findings for substantial evidence, we must examine the evidence in the light most favorable to Mather. (*Williams*, *supra*, 24 Cal.App.5th at

7

p. 1055.) In doing so, we conclude the agreement and Mather's declaration provide substantial evidence to support the trial court's finding of "minimal procedural unconscionability." (*Fisher v. MoneyGram Internat., Inc.* (2021) 66 Cal.App.5th 1084, 1095 [adhesive contract establishes "at least some degree of procedural unconscionability"]; *Tiri*, *supra*, 226 Cal.App.4th at p. 246 ["delegation clause procedurally unconscionable where presented on take-it-or-leave-it basis"].)

2. *The Agreement Was Not Substantively Unconscionable*

Because of the low degree of procedural unconscionability, a "high showing" of substantive unconscionability was required "in order to result in the conclusion that the delegation clause is unenforceable." (*Malone*, *supra*, 226 Cal.App.4th at p. 1570.) We conclude Mather did not meet this burden.

In opposition to PwC's motion to compel arbitration, Mather asserted the delegation clause was substantively unconscionable because the clause created a conflict of interest for the arbitrators and was not within the adhering party's reasonable expectations. Though Mather appears to have abandoned these grounds on appeal, we note they are insufficient to demonstrate substantive unconscionability. An unsupported claim that a delegation clause creates a conflict of interest for an arbitrator "is nothing more than an expression of a judicial hostility to arbitration, based on the assumption that a paid decision maker cannot be unbiased." (*Malone*, *supra*, 226 Cal.App.4th at p. 1569.) Further, Mather submitted no evidence showing the delegation clause was outside her reasonable expectations. Even if she had, it may not have been sufficient to

8

establish a high degree of substantive unconscionability.[1]  (*Id.* at pp. 1570–1571.)

Mather now argues the delegation clause is substantively unconscionable because (1) it requires threshold questions of enforceability to be decided by a three-arbitrator panel in New York, applying New York law, (2) is subject to strict confidentiality, and (3) is bound by the same remedy limitations and procedural constraints that govern the merits.  PwC contends that Mather forfeited these claims by not raising them in the trial court.  As these claims raise pure questions of law, we consider them on the merits.  (*In re Marriage of Priem* (2013) 214 Cal.App.4th 505, 510–511 [new theory involving only question of law may be considered for first time on appeal].)

Mather makes the conclusory assertion that requiring her to arbitrate questions of arbitrability in New York, under its laws, "materially burdens the . . . threshold challenge" and is a "structural advantage" for PwC.  Out-of-state forum and choice-of-law provisions, however, are not inherently unconscionable. (See *Net2Phone, Inc. v. Superior Court* (2003) 109 Cal.App.4th 583, 588 [finding forum selection clauses provide certainty for businesses and customers]; see also *Lu v. Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490, 1493 [recognizing

---

[1]     *Malone* noted it had "substantial concerns regarding the factual basis" for assuming that a delegation clause was outside the parties' reasonable expectations.  (*Malone, supra*, 226 Cal.App.4th at p. 1570, fn. 20.)  "[W]hile it may have been true in 1995 that arbitrator resolution of enforceability was generally outside the reasonable expectation of the parties, by the mid-2000s, it appears to have been the default position of two major nationwide arbitration providers, and therefore, perhaps, more likely to be within the reasonable expectation of the parties."  (*Ibid.*)

plaintiffs bear a "heavy burden" in demonstrating "that enforcement of the [forum selection] clause would be unreasonable under the circumstances of the case"].) Mather did not address the out-of-state forum in the declaration she submitted with her opposition. She cites no evidence to show a New York forum is unreasonable in this case, let alone unconscionable "*as applied* to the delegation provision." (*Rent-A-Center*, *supra*, 561 U.S. at 74.) Mather cites no New York law that would prejudice her ability to show the arbitration agreement is unconscionable. The bare assertion that deciding the issue of arbitrability in New York, under its laws, burdens her more than PwC is not enough to show the delegation clause is substantively unconscionable.

Mather similarly does not explain how the remedy limitations or confidentiality provisions "*as applied to the delegation clause* renders *that* clause unconscionable by impeding her ability to arbitrate whether the arbitration agreement as a whole is unconscionable." (*Tiri*, *supra*, 226 Cal.App.4th at p. 248.)[2] In simple terms, she does not connect-the-dots to show

---

[2]     Federal courts have also held that a party citing provisions outside the delegation clause in making an unconscionability challenge "must explain how those provisions make *the fact of an arbitrator deciding arbitrability* unconscionable." (*Holley-Gallegly v. TA Operating, LLC* (9th Cir. 2023) 74 F.4th 997, 1002; see *Bielski v. Coinbase, Inc.* (9th Cir. 2023) 87 F.4th 1003, 1009–1010 ["a party may challenge the delegation provision and the arbitration agreement for the same reasons, so long as the party specifies why each reason renders the specific provision unenforceable"]; see also *Heckman v. Live Nation Entertainment, Inc.* (9th Cir. 2024) 120 F.4th 670, 680–681 ["'A party is . . . permitted under *Rent-A-Center* to challenge the enforceability of a delegation clause by explaining how "unrelated" provisions make the delegation unconscionable"].)

how the other provisions make the delegation clause unconscionable.  For example, she does not argue the remedy limitations impair her ability to show or the arbitrators' ability to decide whether the arbitration agreement as a whole is unconscionable.  That is "a much more difficult argument to sustain" than the argument that the remedy limitations render the arbitration of her substantive claims unconscionable.  (*Rent-A-Center, supra*, 561 U.S. at 74.)  Because Mather did not demonstrate the delegation clause was unconscionable or invalid, it will be for the arbitrators to consider the enforceability of the agreement as a whole.

### D. The Trial Court Must Determine Whether to Stay the Action in Whole or In Part

While PwC argued the entire action should be stayed pending completion of the arbitration, Mather argued the arbitration agreement did not cover all her claims.[3]  She argued that staying the non-arbitrable claims would prejudice her.

The trial court has discretion to limit a stay under Code of Civil Procedure section 1281.4 to those issues subject to arbitration.  (*Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303, 320.)  Since the trial court did not have the opportunity to rule on the scope of the stay request, we remand to the court to determine whether a stay of any claims would be appropriate.  We express no opinion on the matter.

---

[3]     Mather's complaint is not part of the record on appeal.

11

## DISPOSITION

The order denying PwC's motion to compel arbitration is reversed.  The trial court is directed to enter a new order granting PwC's motion and to determine whether to stay the action in whole or in part.  PwC is awarded costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MORI, acting P. J.

We concur:

TAMZARIAN, J.

COGLIATI, J. **

---

**      Judge of the Santa Cruz County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.